Hon. *John D. Stiles,* for plaintiff in error ;   *E. J. More,* Esq., for defendant in error.

---

*Ninth Judicial District.*

## In the Orphans' Court of Juniata County.

---

IN THE MATTER OF THE ESTATE OF SAML. ALLEN, *Dec'd.*

Judicial sales discharge liens, not estates; the dower of a widow is an estate, and therefore an administrator's sale of the land for the payment of debts, does not discharge it, but the purchaser at such sale takes the land charged with the widow's interest, but free from the lien of arrearages capable of ascertainment.

Exceptions to auditor's report.

Opinion by

JUNKIN, P. J.   Samuel Allen, by will, devised to his son Samuel, his mansion farm, charging it with burdens in favor of his widow, such as the right to occupy the house and barn, pasture for stock, so many bushels of oats, wheat, corn, &c., with firewood, pasture for cows, and $40 per annum in money during her natural life.   All these were charges, which a judicial sale would not divest.   Allen, the devisee, was declared an habitual drunkard, and Waldsmith was appointed his committee, who applied for and obtained an order to sell the devised land for payment of debts of the said Samuel Allen, the devisee.   At the time the decree of sale was made, there were (as afterwards ascertained) $841 unpaid the widow on the $40 annuity.   The court, in making the decree, used this language : "Subject to the interest of Hannah Allen, widow of Samuel Allen, deceased."   A sale was made to Judge Pumroy for $3,000, which was confirmed and deed executed, containing the stipulation just recited. The widow now seeks to compel the purchaser to pay the said arrearages on the $40 annuity, which the auditor finds to be $841.95, which he further finds this purchaser must pay in addition to his bid of $3,000, and this last conclusion he bases on what he believes were the terms of the bidding, to wit, that the purchaser was to take, subject to the widow's

interest; the mere demand of her interest by her agent, Pennabaker, at the time of the sale or immediately before, seems to have impressed him with the force of a contract, or undertaking on the part of Pumroy, to pay whatever these arrearages should prove to be, although the evidence shows very clearly that the claim of the widow was announced vaguely by her agent, as being anywhere between $900 and $3,000, and it was demanded "*right there.*"

We have not the conditions of sale before us, but assume that the committee obeyed the order of the court, and that the purchaser takes, subject to the incumbrances incapable of ascertainment, and the $40 money charge, and this was the interest which no judicial sale could divest, was the interest contemplated by the court when the sale was ordered, and not the arrearages due on the $40 annuity.

The rule is incontestably established that a judicial sale of land divests all liens in their nature capable of ascertainment. It is only when it is clearly ascertained that the purchaser has the amount of the lien, in the price of the land, left in his pocket, with the consent of all the parties in interest that the rule gives way, and the purchaser in equity estopped from denying that the sale was made subject to such lien. And this is so merely personal to the purchaser, that even his own subsequent creditors and alienees are only bound by what the record discloses—if it is silent, they are absolved. In Crooks *v.* Douglass, 6 P. F. Smith 53, Judge Agnew fossilizes in two sentences all there ever was in all the preceding cases, from 3 Yates, down to Zigler's appeal, 11 Casey 173, when he says, "if the price of the estate is still in the purchaser's hands, he is in equity estopped from denying that the sale was made subject to the mortgage. This," he says, "it seems to me is the true principle, and the only good ground for reconciling the various cases upon this subject. Having bought the estate with the understanding that he bids so much less for it, and should hold that much in his hands to be applied to the expected mortgage, it does not lie in his mouth at least, to say he takes the land discharged of it, under the operation of the general rule, that a judicial sale discharges all incumbrances except those expressly saved by statute." Add to this the saying of C. J. Thompson, in Ashmead *v.* McArthur, 17 P. F. Smith 329, and all is clear, namely: "It will be remembered that the arrangement referred to affects no parties but those who made it, and it is not easy to see why they could not *contract for a rule as between themselves, differing from a mere result at law.*" That is to say, the parties contracting make a law unto themselves, which liberates the subject matter from the law of the land. Now, with these principles before us, let us enquire,

First. What did the court do when it ordered this sale to be made, "subject to the interest of Hannah Allen, widow of Samuel Allen, dec'd. ?" Precisely what the law did without the order, to wit, sell the land subject to the charges in favor of the widow, the $40 included, *but not the arrearages capable of ascertainment.* It was proper that bidders might

understand the added burden over the bid. The court could not have intended that on an order to sell to pay debts, the arrearages on the money charge should remain, when it neither knew nor took pains to ascertain the amount of the latter. Any other construction would have subjected the bidder to uncertainty and perplexity, and resulted in a sacrifice. These arrearages were not of record, the evidence was *in pais;* the only parties who knew the amount, the widow and son, were interested in misrepresenting the sum, and did, as the proof shows. Her "interest" was not to be divested, and the word is used in the decree in the sense of share, part, participation and concern. It is not to be presumed that the court intended that, which from its vagueness, would defeat the sale, raise money to pay debts.

If the court made no such condition, the committee could not, except by violating his trust. Randolph's appeal, 6 Barr 245 ; 3 W. & S. 259 ; 4 R. 440. But if he did, and this was assented to by all the parties concerned, in this case by consent of the widow, the committee and the purchaser, and the amount of the arrearages were, by express agreement, left in the land, and the purchase that much under price, then the case is brought within the principle of Crooks *v.* Douglass, 6 P. F. Smith 53, and the purchaser is estopped because he has the money in the land.

Now, what is the evidence on which the auditor found such an arrangement? Simply because, on the day of the sale Pennebaker, the agent of the widow, *claimed* from $900 to $2,900 as the arrearages, read the will, and stated that the widow claimed her money "*right there.*" Judge Pumroy said not a word, and the crier simply read the conditions of sale as directed by the court; the former bid, bought, took his deed, and now is asked to pay $841 over his bid of $3,000 ; whereas, neither Waldsmith, the committee, nor Pumroy, the purchaser, ever spoke one word during the sale. This contract is supposed to grow out of the mere *demand* of the widow, that she wanted her money "right down," so that there was neither agreement nor understanding between any of the parties in interest, that the $841 was to be in addition to the bid.

Now, in Barnett *v.* Washebaugh, 16 S. & R. 410, it is held that "the lien of a legacy will be discharged unless it appears expressly, that it was the clear understanding of all the parties that it was to remain on the land. Mere *notices or loose declarations* were pronounced insufficient for that purpose," and this was afterwards reiterated in Hellman *v.* Hellman, 4 R. 440.

Then, was the land worth more with the admitted encumbrances in favor of the widow, and to which it is legally subject in the hands of the purchaser, than the $3,000 paid by Pumroy? Pumroy, McNair, Wilson, D. W. Allen and others fix its value at $3,000, with the inevitable incumbrances, and the highest figures placed upon it, clear of these, is from $6,000 to $7,000, and these incumbrances are valued at from $2,000 to $3,000; so that it is clear Judge Pumroy has paid a fair price, and we see no ground for making him pay what he never agreed to pay. The widow must look to the proceeds of sale for her money.

The exceptions to the auditor's report are sustained, and the petition dismissed at the cost of the petitioner.

*Doty & Parker,* for petitioner ; *Alexander & Ackison,* contra.